IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JARED EGBERT, individually and as guardian for J.E.; and EMILY EGBERT, individually and as guardian for J.E., <br><br> Plaintiffs, <br><br><br><br><br> vs. <br><br><br><br> NISSAN NORTH AMERICA; NISSAN MOTOR CO., LTD.; and CENTRAL GLASS CO., LTD., <br><br> Defendants. | CONSOLIDATED ORDER (1) DENYING OR (2) GRANTING IN PART AND DENYING IN PART ALL PENDING MOTIONS <br><br><br><br><br><br> Case No. 2:04-CV-00551 PGC |

On February 22, 2006, the court held a hearing on all pending motions in this case.  The court also discussed its plans to prepare for the trial in this matter.  The court ruled from the bench on most of the parties' motions but took some under advisement.  This order memorializes the court's oral rulings and issues decisions for the motions it took under advisement.  Should there be any conflict on details, the court's oral ruling governs.

I.      *Motions to Strike Pleadings*

The court DENIES plaintiffs' motions to strike pleadings as overlength (# 198, 202, 213).

These pleadings fall within the page limits (exclusive of omitted material) in the court's order. The court also DENIES Nissan's motion (# 188) to strike Exhibits 6 to 14 of plaintiffs' motion to exclude the testimony of Richard Morrison.

## II.     Bifurcation

The court hereby orders under Rule 42(b) of the Federal Rules of Civil Procedure that this case be bifurcated into two separate trials.  The first trial shall be limited only to determining Nissan's liability.  If the jury returns a verdict in plaintiffs' favor on liability, the court will hold a second trial to determine damages.  Alternatively, the parties may wish to engage in settlement negotiations if the jury finds Nissan liable.  The court will discuss the timing of the two trials (back-to-back or separated by several months) with counsel.

The plaintiffs' briefs regarding bifurcation indicate that some stipulation regarding injury to the plaintiffs is necessary for the liability phase.  Nissan's counsel indicated at the motion hearing that he thought the parties could reach an acceptable stipulation.  The court will review this matter with the parties at the April 3, 2006, final pretrial conference.

## III.     Motions to Withdraw as Counsel

The court DENIES the motions of plaintiffs' attorneys to withdraw as counsel (# 163, 164, 165) for three reasons.  First, these motions are procedurally deficient and fail to comply with Local Rule 83-1.4, which governs attorney withdrawals.  Second, these motions were filed in late January 2006, too late in the case to allow effective scheduling for another set of attorneys. Third, there is no good reason to permit the withdrawal and realignment of attorneys as proposed. It will serve no additional purpose to allow the plaintiffs' attorneys to represent the Egberts'

infant daughter separately from her parents, particularly now that the court has bifurcated these

proceedings.

    IV.    *Motions in Limine*

    Certain principles of evidence law are applicable to each of the many motions in limine

and *Daubert* motions the parties have filed.  The Tenth Circuit succinctly stated the relevant

principles in *Lantec, Inc. v. Novell, Inc.*[1]  There, the circuit said that Rule 702 of the Federal

Rules of Evidence requires a trial court to consider whether: "'(1) the testimony is based on

sufficient facts or data; (2) the testimony is the product of reliable principles and methods, and

(3) the witness has applied the principles and methods reliable to the facts of the case.'"[2] *Lantec*

also cites the various factors identified in *Daubert v. Merrell Dow Pharmaceuticals, Inc.* that are

helpful in determining the reliability of scientific evidence.[3]

    In exercising the gatekeeping function identified in *Daubert*, the court first finds that it

has sufficient information in the record based on the detailed pleadings and exhibits to rule

without holding a formal evidentiary hearing.  The court will now address each separate motion.

    A.    *Plaintiffs' Motion to Exclude the Testimony of Richard Morrison*

    Plaintiffs seek to exclude the expert opinion of Richard Morrison.  The court DENIES

this motion (# 172).

---

[1]306 F.3d 1003, 1025 (10th Cir. 2002).

[2]*Id.* (quoting Fed. R. Evid. 702).

[3]*Id.* (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-95 (1993)).

The court first finds that Mr. Morrison is a sufficiently qualified expert in the areas of his proposed testimony based on, among other things, his extensive experience in the area of automotive glazing materials.  He has sufficient education and training to offer his opinions.

The court also finds that the plaintiffs have not offered any good reason for doubting that his expert opinion is sufficiently reliable to be admitted in this case.  They allege "unsupported and contradictory opinions."  But these arguments all go to the weight to be given to the evidence, not its admissibility.

The plaintiffs also contend that his opinions have not been subjected to peer review. While that is a factor, this factor is essentially unrealistic in this area — it is not clear that peer reviewed publications are a regular feature of laminated glass discussions.

Plaintiffs also argue that his testimony about direct and sole substitution of laminated glass for tempered glass is irrelevant and not helpful.  The court finds, to the contrary, that it is relevant and will be helpful.  To the extend that these opinions deal with only a part of the plaintiffs' theory, that point can be covered on cross-examination.   With respect to his specific testimony on subjects such as the feasibility of other alternatives, the risk of lacerations in laminated glass, and durability of laminated glass, the court finds that the testimony is sufficiently reliable to satisfy *Daubert* scrutiny.

Finally, plaintiffs also allege that Mr. Morrison's opinions should be excluded as biased. This argument, however, goes to the weight of the evidence, not its admissibility.

B.     *Defendant's Motions to Exclude the Testimony of Fox, Randle, and Marble*

Nissan has moved to exclude or limit the testimony of plaintiffs' damages experts Laura Fox, Paul Randle, and Steven Marble.  The court DENIES this motion (# 167).

First, the court finds that Laura Fox is sufficiently well qualified to give her opinions on the damages subjects she is addressing.  She has bachelor's and master's degrees in Nursing.  She has been a certified life care planner since 1999.  Her opinions on the kind of treatment necessary are sufficiently well-grounded to pass *Daubuert*.

Next, the court finds that Paul Randle is sufficiently well qualified to give opinions.  The challenges defendants make to his opinions (such as the fact that he did not look at tax returns) simply go to the weight to be given to his testimony.  This is straightforward, lost income testimony of the type that courts hear everyday in these kinds of cases.

The court also finds that Dr. Marble is sufficiently well qualified to give an opinion on Emily Egert's spondylolysis and toe catch injuries.  As the court understands Nissan's challenge, it is to causality.  But the Egberts will apparently tie this together by testimony from, among others, Emily herself that she did not have these conditions before the accident.  That is sufficient evidence from which a jury could reasonably conclude a cause-and-effect relationship.  Therefore the testimony is admissible.

C.     *Plaintiffs' Motion to Exclude the Testimony of Doreen Casuto*

The Egberts move to exclude the testimony of Doreen Casuto, Nissan's life care rebuttal expert.  The court DENIES this motion (# 177).

First, there is some suggestion that Ms. Casuto's opinions are inadmissible because she merely plagarized the opinions of plaintiffs' expert, Ms. Laura Fox.  The court finds that Ms.

Casuto's opinions are not plagiarism, but it would be best if counsel would make clear what they are doing.

The court also finds that Ms. Casuto is sufficiently well qualified, by training and experience, to offer the opinions she is offering.  She and Ms. Fox differ in ways that will be explored at trial.  The court will treat both witnesses the same — both can testify and will be subject to cross-examination.

D.      *Nissan's Motion to Exclude the Testimony of Stephen Batzer and Joseph Burton*

Nissan has moved to exclude or limit the opinions of Dr. Stephen Batzer and Dr. Joseph Burton, the Egberts' expert witnesses for the liability phase of the trial.  The court will discuss each expert separately, but in sum, Nissan's motion (# 169) is DENIED IN PART and GRANTED IN PART.

1.      *Dr. Batzer*

The court first finds that Dr. Batzer is a qualified expert based on his training and experience, including a 1998 Ph.D. in Mechanical Engineering-Engineering Mechanics from Michigan Technological University. He has been accepted as an expert in similar cases by other federal courts.

Next, the court finds that his opinions are sufficiently reliable to pass *Daubert* scrutiny. Nissan claims that he has not tested his theory.  In their view, if the court understand the argument correctly, Dr. Batzer would apparently need to build from scratch several new, prototype Nissan Altimas with a new side window system and then test them in rollover accidents before his conclusions could be considered reliable.  *Daubert* does not require this

much.  Instead, *Daubuert* requires that the type of scientific methods used be subject to testing.

Dr. Batzer has used scientific methods that are subject to testing.  The real question in this case is

whether he has applied those methods reliably.  The court finds that he has, at least to extent

necessary to pass a *Daubert* challenge.

Nissan also argues that the available rollover testing refutes his conclusion.  This is a

"battle of the experts" that the jury will decide, not a reason for the court to exclude the evidence.

Finally, the court finds that Dr. Batzer may rely on engineering fundamentals in reaching

his conclusions.

As to Nissan's argument based on Rule 403 of the Federal Rules of Evidence, Dr. Batzer

is obviously central to the plaintiffs' case.  It is difficult for the court to see how any prejudice

from allowing him to testify could substantially outweigh his testimony's probative value.

> 2.    *Dr. Burton*

Nissan's arguments as to the admissibility of Dr. Burton's testimony are intertwined with

the issue of whether seatbelt use evidence is admissible under Utah law.  The court will discuss

its ruling as to Dr. Burton in conjunction with its ruling on seatbelt evidence.

> E.    *Plaintiffs' Combined Motion in Limine*

Plaintiffs' Combined Motion in Limine (# 182) is GRANTED IN PART and DENIED IN

PART as outlined below.

> 1.    *Seatbelt Use*

The Egberts seek to preclude the introduction of any evidence relating to whether Ms.

Egbert was wearing her seatbelt at the time of the accident.  At issue is a Utah statute, Utah Code

Annotated § 41-6a-1806, which provides: "The failure to . . . wear a safety belt: (1) does not constitute contributory or comparative negligence on the part of a person seeking recovery for injuries; and (2) may not be introduced as evidence in any civil litigation on the issue of negligence, injury, or the mitigation of damages."[4]

The court agrees with Nissan, in part, that evidence of Emily Egbert's alleged non-use of a seatbelt is admissible for two limited purposes under the statute.

First, the court finds that the evidence can be considered by the jury in connection with the plaintiffs' claims of design defect and overall safety design.  The Utah Supreme Court's decision in *Whitehead v. American Motor Sales Corp.*[5] specifically allows seatbelt evidence to establish the safe design of the vehicle, and in the context of this case — in which ejection from the vehicle is the central issue — seatbelt evidence will play a legitimate and important part of the jury's assessment of the safety of the vehicle design and its role in this particular accident.

Second, the court finds that seatbelt evidence must be admitted to explain the accident sequence.  The jury is going to hear considerable testimony about how the accident happened, including the events leading to the ejection of Emily Egbert from the car.  To exclude seat belt evidence would give the jury an unfairly distorted picture of what occurred.  Indeed, it is fanciful to think that a jury would not ask the simple and obvious question — was she wearing a seatbelt — in considering the case.  It would encourage jury speculation to exclude the evidence, and cautionary instructions on this specific point will not do the trick.

---

[4]Utah Code Ann. § 41-6a-1806.

[5]801 P.2d 920, 928 (Utah 1990).

There appears, however, to be a general split of authority on whether seatbelt evidence is admissible to prove causation.  Nissan cites *MacDonald v. General Motors Corp.*,[6] which allowed evidence of seatbelt use on proximate cause in the face of a Tennessee seatbelt statute. On the other hand, *Milbrand v. DaimlerChrysler Corp.*[7] specifically declined to follow *MacDonald* in construing a Texas statute.

Neither case, of course, involved the Utah statute.  Here the language of the Utah statute is controlling.  The statute forbids seatbelt evidence "as evidence in any civil litigation on the issue of negligence, *injury*, or the mitigation of damages."[8]  "Injury" is the key term.  Nissan is arguing to use the evidence on "causation."  Although its brief does not spell out the implications, it is arguing to use the evidence on the issue of causation of *something*.  That something is, of course, injury.  Such use falls within the prohibition of the Utah statute. Therefore, this use will not be permitted.

This ruling leads to the related point of whether Dr. Burton's testimony is admissible. Nissan seeks to exclude his testimony on two grounds.  First, Nissan argues it is not sufficiently reliable.  In his report, Dr. Burton opines that "there is at least reasonable probability that Emily Egbert was utilizing the vehicle's available belt restraint system at the time of the incident and that such restraint failed to contain her in the vehicle as it overturned."[9]  He states that his

---

[6]784 F. Supp. 486 (M.D. Tenn. 1992).

[7]105 F. Supp. 2d 601 (E.D. Tex. 2000).

[8]Utah Code Ann. § 41-6a-1806 (emphasis added).

[9]Dr. Burton Rep. at 26.

opinion is supported by his "personal inspection of the subject vehicle's restraint system," the

virtual lack "of difference in the forensic markings on the passenger's and driver's restraint," and

the fact that the "crash report indicates the driver to have been a restrained occupant with lap and

shoulder belt."[10]  In his deposition, Dr. Burton explained how these facts led to his conclusion

that Emily Egbert was wearing her seatbelt when the accident began:

> Q:    All right and Mrs. Egbert in the right front seat, what assumption or
>       conclusion have you reached about her whether or not she was restrained?
> A:    I reached the conclusion that simply based on the forensic evidence that *I
>       believe she was if I assume [Mr. Egbert] was and I disregard history*, and
>       that's because I've gone back and looked at my photos and my report and
>       Dr. Piziali's report.  He says he found evidence on the driver's restraint
>       that it was in use.
>
>          I've took comparative photos of one side versus the other and I
>       don't see any significant difference from the driver to the passenger
>       restraint *so if I assume the driver's restrained simply because of evidence
>       that I saw, then I would likewise assume that the passenger is unless I've
>       got something contrary to that other than what I could see with my eyes*.
>       So I have assumed she's restrained.  If the history indicates somewhere
>       down the line that she wasn't, the findings on both the driver's and
>       passenger's sides are not what I would classify as diagnostic, unequivocal
>       evidence of use for either occupant, the front right or the front left.[11]

    Based on this report and his deposition testimony, the court finds that Dr. Burton's

opinion as to Emily Egbert's seatbelt use should be excluded under Rule 702 of the Federal

Rules of Evidence because it is unreliable.  Dr. Burton's opinion and deposition testimony reveal

a void of scientific, peer-reviewed procedures by which he came to his conclusion — nothing

indicates that it is inherently reliable for seatbelt experts to base an opinion on whether a car

---

[10]*Id.* at 27.

[11]Dep. Joseph Burton 12:24–13:18 (emphasis added).

occupant was belted based mainly on whether other occupants of that same vehicle were also wearing seatbelts. His report also lacks citation of the "existence and maintenance of standards controlling [his] technique's operation" and does not indicate that his techniques have "gained general acceptance in the scientific community."[12]

Even if Dr. Burton's opinion as to Emily Egbert's seatbelt use passed Rule 702's muster, the court finds that it should be excluded under Rule 403 because the evidence's probative value will be substantially outweighed by risk of confusion of the issues. Dr. Burton's testimony as to seatbelt use will divert the jury's attention away from the main issue — whether there was a defect in the side window glass — towards another issue, possible malfunction of the seatbelt.

Therefore, the court excludes Dr. Burton's opinion as to whether Ms. Egbert was wearing her seatbelt when the accident occurred.

### 2. Circumstances of the Accident — "Crashworthiness" Doctrine

Under the Utah Liability Reform Act, it is clear that the jury will be required to apportion fault — to compare, in other words, plaintiffs' arguments on the crashworthiness of the car with Mr. Egbert's negligence as the driver (among other things). Therefore, the circumstances of the accident are relevant. On this point, *Harvey v. General Motors Corp.*[13] is instructive. It allowed evidence of a plaintiff's reckless driving. The authorities cited by the plaintiff (such as *Mercurio* from Ohio) are not instructive. It is not clear that the jurisdictions involved had governing law like the Utah Liability Reform Act. Plaintiffs' motion is therefore denied.

---

[12]*Lantec*, 306 F.3d at 1025 (citing *Daubert*, 509 U.S. at 593–95).

[13]873 F.2d 1343 (10th Cir. 1989).

Plaintiffs also allege that the Egberts' minor daughter was not negligent.  Nissan has indicated it will not be arguing to the contrary.

          3.     *Character Evidence*

Plaintiffs seek to exclude all references to any substance abuse by the Egberts or marital problems that occurred before the accident.  The court, however, will allow a very limited amount of evidence regarding drug use by Jerad and alcohol abuse by Emily during the damages phase of the trial only.  No such evidence will be allowed during the liability phase.

The court realizes that there is prejudice to the plaintiffs in doing so, but the court has carefully balanced the probative value against prejudicial effect and find that the prejudice does not substantially outweigh probative value as required by Rule 403.  In reaching that conclusion, the court has considered the following: First, the trial will be bifurcated.  This means that any prejudice will spillover only to the issue of damages.  Second, Plaintiffs are seeking substantial damages, including damages for loss of consortium and emotional damages.  By so doing, they have placed their pre-accident marital relationship and emotional states at issue, and the evidence to be introduced goes directly to these points.  Third, a limiting instruction can be given on this point.  Fourth, the court can limit the amount of evidence on this point.  In particular, the court will allow Nissan to produce evidence that Jerad Egbert was granted an annulment of the marriage because of Emily's alcohol-related problems and that Jerad's substance abuse was of great concern to Emily.  Specific examples of drug or alcohol use are prohibited.  Finally, no such evidence will be allowed for impeachment purposes.

4.      *Traffic Citations/Failure to Use Restraints*

Plaintiffs seek to exclude any evidence of traffic citations the Egberts may have received or previous failures to use restraints.  The court finds that traffic citations from the day of the accident may not be introduced, but citations received other than that day may be admissible. Where no concrete instances have been brought the court's attention, the court defers ruling until specific evidence is brought forth.

5.      *Tests Performed After the Close of Discovery*

Plaintiffs seek to exclude evidence obtained from tests done after the close of discovery. These further tests were conducted only a few weeks after the deadline, not "long after the close of discovery" as they assert.  In addition, there is no evidence that these tests were conducted specifically for purposes of this litigation — indeed, the tests were performed by Ford Motor Company and not by Nissan.  And the obvious expense involved in the sophisticated tests makes it clear that these tests were part of some broader safety and research program done with regard to a more general approach to safety.  They fall comfortably within the ambit of a supplemental report as envisioned in Rule 26(e)(1).  Therefore, the information is not provided late.

Moreover, even if it could somehow be regarded as late, exclusion would be inappropriate.  Nissan promptly filed supplemental reports on the new tests, and offered to make the experts involved available for an additional deposition.  While plaintiffs declined to take advantage of that opportunity, the deposition would have prevented any prejudice to the parties. As an additional step to avoid prejudice, the court will allow the plaintiffs' expert on this point to discuss and respond to the tests disclosed in Nissan's supplemental reports.  The court will also

allow the parties to depose Mr. Morrison and Mr. Batzer one more time, with the depositions'

scope limited to information related to the tests revealed in the supplemental report.  The court

will allow counsel to schedule mutually convenient dates but encourages haste.

Finally, the court finds that the tests pass *Daubuert* scrutiny and have been performed by

qualified experts.

6.      *Statutory and Industry Compliance*

Plaintiffs question whether Utah Code Annotated § 78-15-6(3) creates a rebuttable

presumption applicable here.  The court finds, as the statute reads, that:

> There is a rebuttable presumption that a product is free from any defect or
> defective condition where the alleged defect in the plans or designs for the product
> . . . were in conformity with government standards established for that industry
> which were in existence at the time the plans or designs for the product . . . were
> adopted.[14]

Moreover, the court finds that FMVSS 205 is a "governmental standard" under the Utah

Code.[15]  Even though it allows a range of options, the only issue is whether Nissan followed one

of those options.  And the Egberts are not disputing compliance with FMVSS 205, other than to

argue that Nissan chose one less safe option among many.  As such, the court finds that a

rebuttable presumption has arisen, and that the plaintiffs will have the burden of rebutting that

presumption.  Nissan will be able to present evidence of compliance.

---

[14]Utah Code Ann. § 78-15-6(3).

[15]*See Bammerlin v. Navistar Int'l Transp.*, 30 F.3d 898, 700 (7th Cir. 1994) (the meaning
of a federal regulation is for the court, not the jury).

       *7.      Ford Experiments*

The court will permit plaintiffs to cross-examine Mr. Morrison regarding the Ford tests

on various types of glass (including laminated glass).  But the court will not permit the

introduction of documents or other evidence regarding the tests, either during cross-examination

or otherwise.

       *8.      Total Compensation*

The court will allow plaintiffs broad latitude to cross-examine defendants experts about

all compensation, including total compensation, that they receive from Nissan and other car

manufacturers.  This is plainly relevant to possible bias.

       *9.      Morrison Experiments*

The court will allow Mr. Morrison to testify about the experiments he conducted, as

relevant demonstrative evidence.  First, the court finds that he is qualified by his experience to

perform such tests.  Second, the court finds that the tests are sufficiently reliable, in light of their

demonstrative nature, to satisfy the *Daubert* requirements.  The court understands that Mr.

Morrison will not be testifying about the precise nature of force required for peel out of a

window.

       *10.      NHTSA Decision on Laminated Glass*

_____The court did not rule on this motion during oral argument but instead took it under

advisement.  After further reviewing the parties' briefs, the court finds that this motion should be

granted in part and denied in part.  To the extent that Nissan wants to use scientific findings

generated by the NHTSA rulemaking effort (for example, that advanced glazing might increase

the risk of neck injuries for belted occupants), Nissan will be permitted to do so – provided, of

course, that the scientific findings are otherwise probably admissible (e.g., satisfy *Daubert*

requirements, have been properly disclosed in discovery, etc.).  The jury should have the benefit

of all available scientific evidence in reaching its decision.  In this vein, the court finds that the

NHTSA studies satisfy *Daubert* scrutiny.

     To the extent, however, that Nissan wants to use the purported conclusion of the NHTSA

rulemaking effort (that risks of immediate rulemaking on lamination outweigh the benefits),

Nissan will *not* be permitted to do so.  The relevance of this conclusion is uncertain, since it is

not obvious that NHTSA is applying precisely the same standards as the jury will be in

evaluationg negligence and/or defect.  Moreover, NHTSA decided not to act.  Determining the

significance of government inaction (and the reasons for that inaction) is always problematic.

Even assuming some probative value, however, under Rule 403, the prejudicial effect of

confusion of issues would substantially outweigh any probative value.  The jury (and presumably

the lawyers) will be drawn into a debate about why NHTSA acted (or rather, decided not to act).

This would involve consideration of why NHTSA makes decisions, what is the scope of

rulemaking, what it means for a federal agency not to act, and a host of related considerations

that have nothing to do with the lawsuit at hand.

     F.    *Nissan's Combined Motions in Limine*

     Nissan has presented thirty issues in its motion in limine.  For the reasons outlined below,

Nissan's motion (# 175) is GRANTED IN PART and DENIED IN PART.

     1.    *Supplemental Reports*

The court's ruling in Section IV.E.5 resolves this motion.

> ### 2.    Seatbelts

The court's ruling in Section IV.E.1 resolves this motion.

> ### 3.    FMVSS 205 Certification

The court's ruling in Section IV.E.6 resolves this motion.

> ### 4.    Rebuttable Presumption

The court's ruling in Section IV.E.6 resolves this motion.

> ### 5.    State of the Art Evidence

The court will permit Nissan to introduce evidence of the state of the art *in 1998*.   That is

relevant to show the reasonableness of the design Nissan chose for the vehicle.

> ### 6.    Post-1998 Glass Designs

Plaintiffs claim that they can demonstrate the feasibility of post-1998 designs as an option

for Nissan in 1998.  Nissan argues that the designs were unavailable in 1998.

Rather than rule in the abstract, the court will require a proffer from the plaintiffs of the

evidence that they wish use to establish feasibility.  If they can establish feasibility in 1998, the

court will allow such evidence.  Plaintiffs shall make this proffer by March 20, 2006.  Nissan

may have until March 29, 2006, to respond.

> ### 7.    Ramanujam Patents

Since these patents were submitted in 1994 and 1997, they are — contrary to Nissan's

argument — potentially relevant.  The court will not allow the patents themselves into evidence.

Under Rule 403, confusion that may stem from introducing the actual patents substantially

outweighs their probative value.  The court will, however, allow direct testimony and cross-examination of the experts on this subject.

### 8.   *Experimental Vehicle*

The experimental vehicle was apparently developed in the early 1970s, more than twenty years before the Altima in question.  Therefore, it does not have significant relevance to the design of a 1998 Altima, since so many different things have changed in cars during the intervening time period.  This evidence will be excluded.

To the extent there is some marginal relevance, Rule 403 prohibits its introduction because the danger of confusion substantially outweighs the probative value of the evidence. These are two entirely different vehicles; the video might unnecessarily focus the jury's attention on the ESV rather than the Egberts' Altima.

This ruling precludes not only testimony about the ESV but also about subsidiary tests done by Nissan engineers on the ESV.

### 9.   *Interpretation of FMVSS 205*

The court will not permit Dr. Batzer to explain the meaning of a federal standard.   That is an issue of law for the court.   Dr. Batzer also is not permitted to speculate about underlying "purposes" of the standard.  He is, however, permitted to explain different designs that would have complied with the standard and to explain why he believes such designs were superior alternatives, provided such testimony is otherwise properly admissible.

The court will, however, instruct that compliance is not dispositive on all the issues in the case, as will be worked out during the jury instruction conference.

     *10.    Suggestion that FMVSS 205 Is Inadequate*

Consistent with the ruling above, plaintiffs will be permitted to rebut the rebuttable presumption that compliance with the law means that the productive is not defective.

     *11.    "Hired Gun" or Derogatory Reference to Counsel*

It is not clear to the court that this motion is necessary.  The court does not anticipate counsel referring to each other during the trial and expects both sides to follow the rules of civility.

The court will preclude unnecessary reference to Nissan as an out-of-state or foreign corporation, except for necessary references to place of business or place of incorporation and the like.

The plaintiffs are free to refer to defendants' experts as "hired guns" — this is a  fair comment, just as similar references by defendants about plaintiffs' experts would be permissible.

     *12.    Expert Compensation from Other Cases*

The court's ruling in Section IV.E.8 resolves this motion.

     *13.    Pre-Trial and Other Trial Related Matters*

The court finds that it is unnecessary to grant this motion.  As plaintiffs suggest, it is fair to comment on the failure to call a witness.  The court is not clear what else Nissan is anticipating and therefore denied the motion as premature in the absence of a concrete example.

     *14.    Ethical or Moral Obligations*

The court will not permit testimony about Nissan's moral or ethical obligations.  As to so-called "Golden Rule" testimony, the court finds that such testimony is admissible as to liability but inadmissible as to damages (if necessary).[16]

      *15.    Personal Beliefs or Opinions*

Counsel, of course, will make arguments about what the evidence shows, not what their personal opinions are.  It is fair argument, however, to say that the evidence shows something outrageous.

      *16.    Prior Testimony of Nissan Engineers*

During oral argument, the court asked for specifics regarding what prior testimony of Nissan engineers might be relevant to this case.  Plaintiffs responded that any deposition from a Nissan representative in a Rule 30(b)(6) context would be admissible as an admission.  The court orders plaintiffs to submit by March 21, 2006, a proffer of any such evidence they wish to introduce.  Nissan may have until March 29, 2006, to respond.  The court will review this evidence and rule on its admissibility during the final pretrial conference.

      *17.    TV Broadcasts, Newspaper Articles, and Non-Scientific Publications*

The court orders plaintiffs to submit by March 20, 2006, any media articles they wish to introduce as evidence.  Nissan may have until March 29, 2006, to respond.  The court will review this evidence and rule on its admissibility during the final pretrial conference.

      *18.  Marketing /Advertising*

---

[16]See *Schultz v. Rice*, 809 F.2d 643 (10th Cir. 1986); *Green v. Louder*, 29 P.3d 638 (Utah 2001).

Evidence in the form of marketing or advertising is admissible if done by Nissan — it is an admission.  This motion is denied.

_____*19.*     *State of Mind*

The court agrees with plaintiffs and will deny this motion as premature until this issue arises in a specific context.

_____*20.*     *Non-Auto Glass Standards*

To the extent this motion seeks a blanket ruling precluding any such reference, the court will deny it and reserve ruling until a specific context arises at trial.

*21.*     *NHTSA Lobby Efforts*

The court will preclude the plaintiffs from referring to any lobbying of NHTSA — under Rule 403, such evidence is confusing, a waste of time, and prejudicial.

The court will, however, permit the plaintiffs to argue that the NHTSA standards are inadequate to provide safe vehicles.  This is part of rebutting the presumption that arises under the Utah statute discussed previously.

*22.*     *Sun-Roofs and Partial Ejection*

The court denies this motion as to partial ejection — that is part of the calculation in designing a safety system.  Similarly, the court denies this motion as to sun roofs — that is also part of the calculation of designing a safety system for the entire car.

*23.*     *Documents by Other Manufacturers*

To some extent, the court dealt with this motion in discussing experiments by Ford. Where this motion overlaps, the court's ruling on that issue governs.

To the extent the prior motion does not overlap, the court will defer ruling until the final

pre-trial conference so that the court can see the specific documents plaintiffs wish to introduce.

      24.     *Unrelated Lawsuits, Claims, Defects*

According to Nissan, apparently evidence of fourteen other accidents will be at issue

here.  The court orders plaintiffs to provide to defendants by March 8, 2006, the names,

addresses, and phone numbers of those involved in these other similar incidents, together with a

description of the incident.  Defendants may have until March 29, 2006, to respond.  The court

will rule on this evidence's admissibility during the final pretrial conference.

      25.     *Costs of Defense*

The court will preclude the plaintiffs from mentioning the costs of Nissan's defense

unless, as plaintiffs argue, it is relevant to some specific point about feasibility.

      26.     *Consumer Safety Purpose*

The court denies the motion as overbroad — the plaintiffs may properly refer to safety

purposes.  Of course, some arguments are improper, such as "send a message" arguments.  But

plaintiffs' counsel are fully aware of the rules on proper argument, so the motion will be denied.

      27.     Ruiz v. Boudreux *Misconduct*

The court grants this motion.  Even if such evidence were relevant to truthfulness under

Rule 608(b), its prejudicial effect would substantially outweigh its probative value by diverting

the jury's attention to some other case.  Such evidence will be excluded.

      28.     *Drug and Alcohol Abuse*

The court's ruling in Section IV.E.3 resolves this motion.

29.     *Per Diem*

The court denies this motion because plaintiffs are not making this argument.

30.     *Day in the Life Videotape*

The court will reserve ruling on this motion until it views the tape.  Plaintiffs shall submit this to the court by March 29, 2006, so that the court may view it and rule on its admissibility during the final pretrial conference.

V.      *Other Deadlines*

The court sets a final pretrial conference for **Monday, April 3, 2006** at **2:30 p.m.**  At that time, the court will rule on the remaining motions in limine.  The parties are instructed to come prepared with final witness and exhibits lists and be prepared to pre-admit as many exhibits as possible.  The court encourages counsel to confer before the final pretrial and stipulate to the admission of as many exhibits as possible.  The court will also set time limits for the trial.

The parties are also instructed to exchange proposed jury instructions by March 20, 2006.  Following the April 3 pretrial conference, the parties shall review the instructions to ensure continued relevancy.  The parties shall then submit to the court via email by April 5, 2006, a set of stipulated jury instructions together with any objections or disputed instructions.  On April 5, the parties shall also submit a proposed special verdict form.  The court will review the parties' proposed instructions, both stipulated and disputed, and the special verdict form before the jury instruction conference to be held on **April 10, 2006** at **3:00 p.m.**

VI.     *Conclusion*

The court DENIES motions 163, 164, 165, 167, 172, 177, 188, 198, 202, and 213.  The

court GRANTS IN PART and DENIES IN PART motions 169, 175, and 182.

SO ORDERED.

DATED this 1st day of March, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge