David C. Biggs, Esq. (0321)
Steele, Ruffinengo & Biggs, LLC
5664 S. Green St.
Murray, UT 84123
801-524-9392
801-323-9037 Fax

Preston L. Handy, Esq. (6239)
Siegfried & Jensen
5664 S. Green St.
Murray, UT 84123
801-266-0999
801-266-1338 Fax

Patrick M. Ardis (TN 8263)
Jill M. Madajczyk, Esq. (TN 020574)
Wolff Ardis, P.C.
5810 Shelby Oaks Drive
Memphis, TN 38134
901-763-3336
901-763-3376 Fax

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH,
CENTRAL DIVISION**

| | |
|---|---|
| JARED EGBERT, EMILY EGBERT, <br><br>individually and as guardians for <br>JANESSA EGBERT <br><br>    Plaintiffs, <br><br>vs. <br><br>NISSAN NORTH AMERICA, INC.; <br>NISSAN MOTOR CO., LTD.; NATIONAL <br>AUTO PLAZA, INC.; CARLEX GLASS <br>CO., CENTRAL GLASS CO., LTD. and <br>JOHN DOES 1 THROUGH 10 <br><br>    Defendants. | **BRIEF IN RESPONSE TO <br>PROPOSED CERTIFICATION ORDER** <br><br><br><br>CASE NO. 04-CV-551 <br><br>Judge Paul G. Cassell <br>Magistrate David Nuffer |

Plaintiffs submit this response to the *(Proposed) Order Certifying Questions of Law to the Utah Supreme Court*.

1. **Request to Interpret Section 2 (Purposes) of FMVSS 205**

Plaintiffs request that the Court interpret FMVSS 205 before issuing the certification. Two provisions are involved:

> **S2. Purpose**. The purpose of this standard is to ... minimize the possibility of occupants being thrown through the vehicle windows in collisions.
>
> **S5.1.**   Glazing materials for use in motor vehicles, except as otherwise provided in this standard shall conform to American National Standard "Safety Code for Safety Glazing Materials for Glazing Motor Vehicles Operating on Land Highways" Z-26.1-1977, January 26, 1977, as supplemented by Z-26.A1, July 3, 1980 (hereinafter referred to as "ANS Z26").[1]

The Court's finding of a presumption of non-defect and its proposal to certify the question of the standard of proof for rebutting this presumption rest upon the implicit interpretation of FMVSS 205 that compliance with S5.1 constitutes compliance with all sections of FMVSS 205 – and consequently that S2's purpose to minimize occupant ejection has no meaning or effect in FMVSS 205 and no role in the invocation of the presumption of non-defect.

The question is: Does the enacted purpose in S2 to "minimize the possibility of occupants being thrown through the vehicle windows in collisions" have any meaning, effect, or role in the design and installation of automotive side windows?

---

[1] 49 C.F.R. § 571.205 (1997), Standard No. 205, S2 and S5.1.  The applicable version of 49 C.F.R. § 571.205 is the one in effect in July 1997, the date the Egbert Nissan Altima was manufactured.  A copy of the 1997 version of 49 C.F.R. § 571.205 is attached hereto as Exhibit 1.

Plaintiffs contend that the canons of construction applied to FMVSS 205 require the courts to interpret FMVSS 205 (1) to give meaning and effect to all of the clauses and words in FMVSS 205 including the clause in S2 "to ... minimize the possibility of occupants being thrown through the vehicle windows in collisions,"[2] (2) to interpret FMVSS 205 in light of S2's purpose to minimize occupant ejections,[3] (3) to give effect to the plain language in S2 to "minimize" the possibility of occupant ejections,[4] (4) to give effect to the clear expressed intent to reduce ejections through glazing materials,[5] (5) to construe FMVSS 205 as a whole by harmonizing S5.1 and S2,[6] and (6) to interpret FMVSS 205 consistent with the underlying statutory purpose to prevent traffic injuries and deaths.[7]

---

[2] *United States v. Menasche*, 348 U.S. 528, 538-39, 75 S.Ct. 513, 520 (1955) ("It is our duty to 'to give effect, if possible, to every clause and word of a statute.'").

[3] *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 608, 99 S.Ct. 1905, 1911 (1979) ("As in all cases of statutory construction, our task is to interpret the words of [the statute] in light of the purposes Congress sought to serve.").

[4] *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056 (1980) ("[T]he starting point for interpreting a statute is the language of the statute itself.").

[5] *Zadvydas v. Davis*, 533 U.S. 678, 696-697, 121 S.Ct. 2491, 2502 (2001) ("if 'Congress has made its intent' in the statute clear, 'we must give effect to that intent").

[6] *F.D.I.C. v. Canfield*, 967 F.2d 443, 446 (10th Cir. 1992); 2A N. Singer, Sutherland on Statutory Construction, § 46.05, pp. 154-181 (6th ed. 2000) (axiomatic that statute should be read as a whole). *See also United States v. Hartwell*, 73 U.S. (6 Wall.) 385, 386, 18 L.Ed. 830 (1868) (in construing statute court should adopt that sense of words which best harmonizes with context and promotes policy and objectives of legislature).

[7] *United States v. Lachman*, 387 F.3d 42, 52 (1st Cir. 2004) (Courts should "construe a regulation in light of the congressional objectives of its underlying statute.").

ANS Z26, which is incorporated into S5.1, merely sets forth materials tests which all types of safety glazing materials must meet before they can be used in a motor vehicle window. These materials tests are not required to be conducted on vehicle windows but merely on a 12 x 12 inch specimen of flat glazing. ANS Z26 (1980), Section 3.2. (A copy of ANS Z26 (1980) is attached hereto as Exhibit 2.) ANS Z26 provides no requirements, tests, standards, or even guidelines for the design and installation of the actual side windows. ANS Z26 does not regulate the size, shape, thickness, curvature, frame, support, movement, pillars, door structure, or other characteristics of the side windows. It contains no tests or standards for the performance of the side window systems in accidents. It contains no tests or standards for the crashworthiness of the side windows. It contains no tests or standards for the containment of occupants and the prevention of ejections in rollovers or other crashes. S5.1 and ANS Z26 leave it totally up to the automobile manufacturers to design and install safe side window systems. The only provisions for the performance of the actual side window systems are the purposes in S2.

The interpretation that comports with the canons of construction is that S5.1 sets standards for testing materials to determine if they may be used in side windows and S2 sets standards for the performance of the actual side window systems. An automobile manufacturer may select any glazing materials that meet S5.1's ANS Z26 materials tests, but then must design and install the actual side window system to meet the performance standards in S2, including the requirement to minimize occupant ejection.

For example, the plain meaning rule requires the courts to enforce plain language.[8] Justice Scalia expressed the plain meaning rule as follows:

> It is a statute. I thought we had adopted a regular method for interpreting the meaning of language in a statute: first, find the ordinary meaning of the language in its textual context; and second, using established canons of construction, ask whether there is any clear indication that some permissible meaning other than the ordinary one applies. If not-and especially if a good reason for the ordinary meaning appears plain-we apply that ordinary meaning.

*Chisom v. Roemer*, 501 U.S. 380, 404, 111 S.Ct. 2354, 2369 (1991) (Scalia, J., dissenting). *See also Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 279, 283, 116 S.Ct. 637, 645, 647 (U.S. (Ill.),1996) (Scalia, J., concurring in part) ("In my view a law means what its text most appropriately conveys.... The text's the thing ...."). The meaning of the language in S2 "to ... minimize the possibility of occupants being thrown through the vehicle windows in collisions" is plain – to minimize occupant ejections. There is "no clear indication that some permissible meaning other than the ordinary one applies."

Nissan and the other automobile manufacturers take the position that S2's purpose to minimize ejections is not part of the regulation, has no meaning or effect, imposes no obligations, and may be ignored. It is conceded by all that the tempered glass used in the side windows breaks, shatters, and vacates the window openings immediately upon impact; provides no or very little protection against occupant ejection; and does not minimize ejection. Nissan's and the other automobile manufacturers' position has been for decades that as long as the type of glass

---

[8] *See* 2A N. Singer, Sutherland on Statutory Construction § 46.01, p. 113 -129 (6th rev. ed. 2000) (plain meaning rule).

used in the side windows satisfies the ANS Z26 materials tests performed on 12 x 12 inch flat samples of glass, the side window systems comply fully with FMVSS 205, regardless of the design, installation, performance, crashworthiness, or ejection minimization of the actual side window systems.  This interpretation violates the canons of construction: it gives no effect to S2's third purpose, no effect to the plain language to minimize the possibility of occupant ejections, and no effect to the clear intent to reduce occupant ejections; it is not interpreted "in light of" S2's stated purpose to minimize ejections; it does not read the provisions of FMVSS 205 as a whole, and it is not consistent with the underlying statutory purpose to prevent injuries and deaths in accidents.

Reducing ejections through windows also furthers the purpose of the National Traffic and Motor Vehicle Safety Act of 1966 to reduce deaths and injuries in automobile accidents.[9]  Side window systems that reduce ejections reduce deaths and injuries in automobile accidents.

It becomes a question of law for the court to determine whether Nissan was required to comply *only* with S5.1's ANS Z26 materials tests or whether Nissan was *also* required to design and install side window systems that complied with S2's purpose to minimize occupant ejection.

Once FMVSS 205 is interpreted properly, any rebuttable presumption which arises from compliance with S5.1 becomes a non-issue.  Plaintiffs do not dispute that the tempered glass in the front driver's side window of the Egbert vehicle was properly tempered and that the glass used passed the ANS Z26 materials tests.  Thus, there is no need for a presumption arising from compliance with S5.1.  Plaintiffs will not challenge S5.1 compliance.

---

[9] *See* 28 U.S.C.§ 30101 ("The purpose of this chapter is to reduce traffic accidents and deaths and injuries resulting from traffic accidents.").

What Plaintiffs challenge is that the side window system complied with S2.[10]

If the jury finds the side window system complied with S2 (minimized ejection), then the presumption of non-defect will arise. Absent a factual finding that the side window system complied with S2, the presumption of non-defect under S2 should not arise. Therefore, the question for certification relates to the standard of proof to rebut the presumption of non-defect under S2 if the jury finds the side window system complied with S2.

The question for the Utah Supreme Court on the standard of proof to rebut the presumption of non-defect may be the same whether the presumption arises from compliance with S5.1 or compliance with S2. Nonetheless, the interpretation of S2's role in FMVSS 205 is important for many other important issues in the case: the finding needed to give rise to the rebuttable presumption of non-defect, the jury instructions on the effect of compliance with S2 and/or S5.1, the jury instructions on the effect of non-compliance with S2, etc.

## 2. **Duty to Interpret**

Plaintiffs recognize that for decades Nissan and other automobile manufacturers have ignored S2's purpose to minimize ejection in the design and installation of side windows and have designed and installed side windows with no regard to occupant ejection. Nonetheless, S2's purpose to minimize occupant ejections exists in the regulation and must have some meaning.[11]

---

[10] Plaintiffs also contend that the side window system, regardless of compliance *vel non* with FMVSS 205, was defective and unreasonably dangerous under Utah law.

[11] Begging the Court's indulgence, Plaintiffs suggest S2's ignored purpose "to ... minimize the possibility of occupants being thrown through the vehicle windows in collisions" may be likened to "The Statute That Time Forgot." *See* Cassell, J., The Statute That Time Forgot: 18 U.S.C. § 3501 and the Overhauling of Miranda,." 85 Iowa L. Rev. 175 (1999). With further indulgence, Plaintiffs note both § 3501 and S2 of FMVSS 205 became effective in the same year (1968) and thus have been ignored about the same length of time.

One canon of construction suggests the federal courts possess a duty to interpret federal laws: "It is our duty 'to give effect, if possible, to every clause and word of a statute.'" *United States v. Menasche*, 348 U.S. 528, 538-39 ,75 S.Ct. 513 (1955).  Another: "It is the duty of courts to interpret these laws and apply them in such a way that the congressional purpose is realized." *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 828, 106 S.Ct. 3229 (1986) (Brennan, J., dissenting).  "Interpretation of federal law is the proprietary concern of ... federal ... courts." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 275, 117 S.Ct. 2028, 2037 (1997).

Plaintiffs request the Court to fulfill the judiciary's "duty" to interpret federal laws even if the automobile industry has ignored and continues to ignore S2's purpose to minimize occupant ejection.

    Respectfully,

    WOLFF ARDIS, P.C.

    /s/ Jill M. Madajczyk
    Patrick M. Ardis
    Jill M. Madajczyk
    WOLFF ARDIS, P.C.

    ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

This is to certify that the foregoing brief was served through the ECF system on the 5th day of May, 2006:

  Tracy H. Fowler (tfowler@swlaw.com)
Kamie F. Brown (kbrown@swlaw.com)
Snell & Wilmer L.L.P.
15 West South Temple, Suite 1200
Gateway Tower West
Salt Lake City, Utah  84101-1004


      /s/ Jill M. Madajczyk

W:\cases\EGBERT\TRIAL\CERTIFICATION QUESTION\Brief re Proposed Order on Certification.wpd