IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| EMILY EGBERT and JERAD EGBERT, individually and as guardians for J.E., a minor,<br><br>Plaintiffs,<br><br>vs.<br><br>NISSAN NORTH AMERICA, INC.; NISSAN MOTOR CO., LTD.; and CENTRAL GLASS CO., LTD.,<br><br>Defendants. | ORDER CERTIFYING QUESTIONS OF LAW TO THE UTAH SUPREME COURT<br><br><br><br>Case No. 2:04-CV-00551 PGC |

This products liability case involves a rollover of a Nissan Altima. The plaintiffs allege that the glass in the Altima's front passenger window was defective because it was not sufficiently strong to prevent or impede the ejection of a passenger, thereby leading to enhanced injuries to plaintiff Emily Egbert when she was ejected from the car. Nissan responds that the Altima was not defective because, among other reasons, the car's glass complied with applicable government safety standards. Because this case is in federal court under diversity jurisdiction, substantive Utah law is controlling. While preparing for the trial of this case, the court determined that two important issues regarding Utah products liability law were uncertain:

1. In a product liability case where a manufacturer's product complies with applicable government safety standards, should the jury be instructed that a presumption of non-defectiveness has arisen under Utah Code Ann. § 78-15-6(3)? If so, should the instruction require clear and convincing evidence of a defect to rebut the presumption, or is proof by a preponderance of the evidence sufficient for rebuttal?

2. Does Utah recognize the "enhanced injury" theory of liability outlined in § 16(a) of the *Restatement (Third) of Torts: Products Liability*?

Because the answers to these questions are controlling in this case but are uncertain under existing Utah law, under Rule 41 of the Utah Rules of Appellate Procedure, this court certifies these two questions of law to the Utah Supreme Court.

## FACTUAL BACKGROUND

This case stems from a rollover automobile accident involving plaintiffs Jerad and Emily Egbert. In 2002, Mr. Egbert was driving the couple's 1998 Nissan Altima on Interstate 15 near Cedar City, Utah. Mrs. Egbert, then nearly eight months pregnant with their minor daughter J.E., was riding in the front passenger seat. When Mr. Egbert tried to avoid another vehicle, he lost control of the car and it rolled off the highway approximately two and one-half times.

At some point during the accident, the Altima's front passenger window shattered. The window was made of tempered glass and complied with the applicable federal motor vehicle regulations in place at the time the car was manufactured. Mrs. Egbert (who, some evidence indicates, might not have been wearing her seat belt) was ejected through the front passenger window portal after the glass shattered. She broke her pelvis and sustained other injuries. Her

ejection also may have led to the premature birth of J.E., who was born with serious brain injuries. Because of other events that followed Mrs. Egbert's ejection, the parties dispute whether and to what extent the ejection proximately caused J.E.'s injuries. Mr. Egbert was not seriously injured during the accident.

The Egberts have brought products liability claims against Nissan under two different theories: strict liability and negligence. They claim that the front passenger window was defectively designed because it was made of tempered glass rather than laminated glass. According to the Egberts, tempered glass is designed to shatter on impact, leaving a portal through which a vehicle's occupant may be ejected during a rollover accident (as happened here). The Egberts claim that the window should have been made of laminated glass, which is designed to remain intact even if it cracks. Laminated glass thereby functions as a secondary restraint mechanism to keep occupants inside the vehicle. The Egberts claim that had the Altima's window been made of laminated glass, Mrs. Egbert may have remained inside the vehicle during the rollover accident even if she was not wearing her seat belt, thereby possibly decreasing the injuries she and J.E. sustained.

During the jury instructions conference, the parties vigorously disputed several issues of Utah products liability law. After reviewing the parties' objections to the proposed instructions and conducting its own research, this court determined that two disputed issues of Utah law are controlling in this proceeding and are not subject to controlling Utah law — the requirements for certifying a question to the Utah Supreme Court.[1] The court sua sponte discussed with the

---

[1] Utah R. App. P. 41(c)(1)(B) & (C).

parties the possibility of certifying these issues to the Utah Supreme Court.  The Egberts generally favored certification; Nissan generally objected.  For the reasons described below, certification is appropriate.

## DISCUSSION

*1.  The Rebuttable Presumption in Utah Code Ann. § 78-15-6(3)*

In earlier proceedings, this court has held that the front passenger window in the Egbert's 1998 Altima complied with Federal Motor Vehicle Safety Standard 205, the applicable government standard in place when Nissan manufactured the Altima.  Nissan therefore claims, and this court has held, that the rebuttable presumption of non-defectiveness in found in Utah Code Ann. § 78-15-6(3) applies to the Altima's window glass.

The parties dispute, however, how this presumption should be described in the jury instructions.  Both sides appear to agree that the plaintiff must prove the existence of a defect as an element of both the strict liability and negligence causes of action.  This is consistent with the Utah Supreme Court's holding that "[p]roducts liability always requires proof of a defective product," whether the case sounds in negligence or strict liability.[2]  But beyond that, Nissan claims that the instructions should also (1) inform the jury of the presumption of non-defectiveness and (2) require the Egberts to rebut the presumption of non-defectiveness by proving the existence of a defect by clear and convincing evidence.

Nissan supports its argument by citing Utah cases holding that clear and convincing evidence is required to overcome a rebuttable presumption.  For instance, Nissan cites *Abbott v.*

---

[2] *Bishop v. GenTec, Inc.*, 2002 UT 36, ¶ 25, 48 P.3d 218, 225–26.

*Christensen*[3] and *Brimm v. Cache Valley Banking Co.*[4] for the proposition that Utah Code Ann. § 73-1-10 establishes a presumption regarding the transfer of water rights that can only be rebutted by clear and convincing evidence.[5]  Nissan also cites *Controlled Receivables, Inc. v. Harman*, which held that "[t]he recording of a deed raises a presumption of delivery, which presumption is entitled to great and controlling weight and which can only be overcome by clear and convincing evidence."[6]  Nissan cites other similar cases in support of its position.[7]  Nissan argues that Utah Code Ann. § 78-15-6(3) must be read as creating the need for clear and convincing rebuttal because otherwise it would be a nullity; the Egberts already bear the burden of proving each element of their causes of action — including the existence of a defect — by a preponderance of the evidence.

The Egberts oppose any instruction that would require proof of a defect by clear and convincing evidence and argue that the preponderance of the evidence standard applies.  This lower standard, they claim, will not render § 78-15-6(3) a nullity because the presumption of

---

[3] 660 P.2d 254 (Utah 1983).

[4] 269 P.2d 859 (Utah 1954).

[5] *Abbott*, 660 P.2d at 256 (citing *Brimm*, 269 P.2d at 864).

[6] 413 P.2d 807, 809 (Utah 1966).

[7] *See Cooke v. Cooke*, 2001 UT App 110, ¶ 9, 22 P.3d 1249, 1251–52 (holding that presumption of correctness applies to a return of service by a private process server and that this presumption can be disproved only by clear and convincing evidence); *In re Estate of Ashton*, 898 P.2d 824, 826 (Utah Ct. App. 1995) ("When title to property is held in joint tenancy with right of survivorship, a rebuttable presumption arises that the title holders intended to create a valid joint tenancy.  A party challenging the validity of a joint tenancy bears the burden of proving by clear and convincing evidence that at the time title was taken by the joint tenants there was no intention to create a valid joint tenancy with rights of survivorship." (citations omitted)).

non-defectiveness provides these two benefits to Nissan: first, it places upon the Egberts the burden to come forward with evidence of a defect; and second, it allows the court to instruct the jury that is product is presumed to be free of a defect — an instruction that Nissan can highlight in its closing arguments.  Thus, the Egberts did not object to a jury instruction that informed the jury of the presumption.  Instead, they object to any instruction that requires clear and convincing evidence to rebut the presumption.

While resolving these objections, the court found authority that indicates both parties may be incorrect.  In 1952, the Utah Supreme Court discussed presumptions in *Tuttle v. Pacific Intermountain Express Co.* (a case not cited by the parties) and said:

> The ordinary presumption merely places on the party claiming the non-existence of the presumptive fact the burden of producing evidence from which the fact trier could reasonably find the non-existence of such fact.  In other words, it places on the opposing party the burden of going forward with the evidence or of making a prima facie case on that issue.  If the opponent fails to meet this burden the presumptive fact should be assumed and the jury should be so instructed if the facts on which the presumption is based is established, but if the required burden is satisfied by the opponent the presumption disappears and the facts must be established from the evidence the same as though no presumption were ever involved and it is not proper in such case to even mention in the instructions the existence of such presumption.[8]

*Tuttle* involved a common law presumption that predated the Utah Liability Reform Act, and no Utah court has discussed whether the presumption in Utah Code Ann. § 78-15-6(3) is an "ordinary presumption" subject to the rule announced in that case.  But if *Tuttle* applies to § 78-15-6(3), both parties would be mistaken — and this Court would not instruct the jury on this presumption if the Egberts produced at trial evidence that the Altima's window was defectively

---

[8] 242 P.2d 764, 769 (Utah 1952).

designed.[9] And if no such evidence was introduced, the "presumptive fact [of non-defectiveness] should be assumed," leading to a directed verdict for Nissan because of the Egberts' failure to establish an essential element of their claims.

The existence of a defect is a necessary element for both of the Egberts' claims. As such, the presumption of non-defectiveness to which Nissan is entitled affects what sort of evidence the Egberts must adduce at trial as well as the jury instructions for negligence and strict liability. Because no Utah court has directly discussed what level of proof is required to rebut the presumption in Utah Code Ann. § 78-15-6(3), or whether the jury should even be instructed on this presumption,[10] this court respectfully asks the Utah Supreme Court to answer the first certified question.

---

[9] The Colorado Supreme Court has adopted this position with respect to presumptions created by Colorado's products liability statute. *See Mile Hi Concrete, Inc. v. Matz*, 842 P.2d 198, 205–07 (Colo. 1992).

[10] This court realizes that the Egberts have not specifically objected to giving the jury an instruction on the presumption of non-defectiveness. Under conventional rules of trial and appellate procedure, the issue of whether to give an instruction at all might be parsimoniously viewed as not having been presented to this court or, by extension, to the Utah Supreme Court on certification. This conventional approach, however, must give way to other considerations. As the United States Supreme Court has explained, when the resolution of a question of law is a "predicate to an intelligent resolution" of the question on which it granted certiorari, it can be regarded as fairly comprised within it. *Vance v. Terrazas*, 444 U.S. 252, 258–59 n.5 (1980). Here, intelligent resolution of the question *what* a jury instruction on the presumption of non-defectiveness should contain is predicated on resolving the question *whether* a jury instruction should even be given. Moreover, under federal procedural law, the plaintiffs are apparently free to change their position on whether to give a jury instruction at any time until the jury has been summoned. *See United States v. Serawop*, 410 F.3d 656, 667 n.8 (10th Cir. 2005) (quoting Fed. R. Crim. P. 30(d)); *see also* Fed. R. Civ. P. 51(c). Given that the plaintiffs could change their position at some later time, it is appropriate for this court to end any uncertainty and certify the question of whether to even give an instruction on the presumption of non-defectiveness.

*2. The Enhanced Injury Doctrine*

While the Egberts' claims are based on allegedly defective car window glass, they have repeatedly referred to this case as an "enhanced injury" case. By this description they apparently mean that Emily Egbert's and J.E.'s injuries were greater than what they otherwise would have been because of the alleged defect in the glass. They seek to introduce evidence at trial to substantiate their enhanced injuries claim and have asked this court to provide an enhanced injury instruction to the jury.

The Egberts' argument is based on § 16(a) in the *Restatement (Third) of Torts: Products Liability*, which reads: "When a product is defective at the time of commercial sale or other distribution and the defect is a substantial factor in increasing the plaintiff's harm beyond that which would have resulted from other causes, the product seller is subject to liability for the increased harm."[11] They claim that the Utah Supreme Court implicitly adopted this theory of products liability in *Richardson ex rel. Richardson v. Navistar International Transportation Corp.*[12] when it answered a question certified by the United States Court of Appeals for the Tenth Circuit.

Nissan responds that such an instruction would be improper because Utah has not adopted this theory of products liability. Nissan contends that *Richardson* could not have adopted this theory of liability because "enhanced injury" was not part of the certified question. Nissan also points to a Tenth Circuit decision that, interpreting Utah law, affirmed a district

---

[11] Restatement (Third) of Torts—Products Liability § 16(a).

[12] 2000 UT 65, 8 P.3d 263.

court's refusal to adopt an proposed "enhanced injury" theory because it apparently did not apply on the facts of that case.[13]

This court agrees with Nissan's position that *Richardson* did not adopt the enhanced injury doctrine. But that simply means that Utah case law does not directly address the subject of enhanced injuries — not, as Nissan would have it, that the case law clearly disavows such a theory. The issue of enhanced injury is important here. Indeed, the Egberts' have built much of their case around this legal premise and contend that the enhanced injury doctrine allows them to hold Nissan liable because the window's allegedly defective design increased Mrs. Egbert's injuries beyond what they would have been if the window had been made of laminated glass that would have contained or restrained her. Because Utah law is virtually silent on this issue, this court respectfully asks the Utah Supreme Court to answer the second certified question.

## CONCLUSION

This Court concludes that the two questions of law outlined above are uncertain under existing Utah law, that they are controlling in this case, and that there is no controlling Utah law. Accordingly, the clerk of this Court shall transmit a copy of this Order of Certification to counsel for all parties to the proceedings in this Court. The clerk shall also submit to the Utah Supreme Court a certified copy of this Order and any other portion of the record before this court that may be required by the Utah Supreme Court.

---

[13]*Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1473, 1478–79 (10th Cir. 1993).

Under Rule 41(f) of the Utah Rules of Appellate Procedure, this Court orders that each party shall bear its own fees and costs of this certification.

SO ORDERED.

DATED this 8th day of May, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge